IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **CHANEL DAVIS** | § | |
| | § | |
| **v.** | § | **NO. 4:24-CV-00762-BD** |
| | § | |
| **FRANK BISIGNANO,** | § | |
| *Commissioner, Social Security* | § | |
| *Administration* | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chanel Davis seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the United States Social Security Administration Commissioner denying her claim for disability-insurance benefits. Having reviewed the transcript of the administrative hearing, the parties' briefs to this court, and the evidence in the administrative record, the court will reverse the Commissioner's decision and remand the case for further administrative proceedings.

**BACKGROUND**

A "younger person" at the time of her application, *see* 20 C.F.R. § 404.1563(c), Davis applied for benefits based on her anxiety disorder, panic disorder, agoraphobia, and post-traumatic stress disorder ("PTSD"). AR 223. The Commissioner denied her application and request for reconsideration.

At a subsequent hearing before an administrative law judge ("ALJ"), Davis testified that she had acquired a GED and had previously worked as a correctional officer, daycare worker, customer-service provider, and insurance clerk. AR 72–73, 90. The hearing covered a range of other topics, including her family, home life, and social life. *See* AR 80–84. The ALJ also heard testimony regarding prior incidents of anxiety attacks, AR 84–85, and loss of concentration, AR 87.

Davis had returned to work since her original request for benefits. AR 68–69. Her representative explained that, in January 2023, Davis started working from home "in a quiet environment with no social interaction," but that even that job was "not working out well for her."

AR 69. Davis later testified that, between September and October 2023, she took a month-long leave of absence. AR 69, 74.

At the time of the hearing, Davis was taking medications for her mental-health conditions, AR 75, and exploring counseling options, AR 75, 85–86. She testified that her depression causes her to feel tired and fatigued easily, especially when she is stressed out. AR 75–76. She also explained that her anxiety comes and goes and that some days are more difficult than others. *Id.*

When asked about how her mental-health conditions affect her work schedule, Davis testified that she leaves work early at least three to four times each month, relying on her accumulated leave to cover her missing hours. AR 75. She testified that she currently works from home between 9:00 a.m. and 5:30 p.m. AR 78. She noted that her employer allows two 15-minute breaks and a 30-minute lunch. *Id.* In addition to her prescribed breaks, Davis testified that she works only 30–45 minutes at a time, after which, she takes a short break. *Id.* She testified that she pauses her work about eight to twelve times a day to rest. AR 79. Davis testified that her anxiety and fatigue often trigger her need for a break. *Id.* She reported that she would start crying, feel overwhelmed, and lose her concentration. *Id.* When she did log off early, Davis testified that she would "go l[ie] in bed the rest of the day and try to sleep." AR 83.

The ALJ asked vocational expert Jerry Hildre about a hypothetical person of Davis's age, experience, and education who does not have any exertional limitations but has additional restrictions of never climbing ladders, ropes, or scaffolds; avoiding extreme heat; avoiding unprotected heights; being limited to performing simple, routine tasks and simple decision-making with no more than occasional changes in a routine environment; and only occasional interaction with supervisors, coworkers, and the public. AR 91. Hildre testified that such a person could not perform Davis's past work but could work as a cleaner, assembler, or laundry folder. AR 91–92. When the hypothetical person's exertional range was limited to sedentary, Hildre testified that such a person could work as an optical-lens inserter, optical-goods assembler, and a household patcher. AR 93. The ALJ also asked Hildre about a hypothetical person who needed unscheduled breaks that resulted in being off task for more than 15% of the workday or workweek or who missed

work more than two days per month. AR 94. Hildre testified that there were no unskilled jobs available with those restrictions. *Id.*

After the hearing, the ALJ issued a decision, AR 33–45, concluding that, even though "[s]he [wa]s still working" and reported income for 2023 in amounts above the threshold for substantial gainful activity, Davis "has not engaged in substantial gainful activity since December 2, 2020, the alleged onset date." AR 35–36; *see* AR 41 (recognizing that Davis "has been working for what appears to be the past year"). Her decision went on to find that Davis met several other requirements for obtaining benefits, including establishing the severe impairments of bipolar disorder, attention deficit hyperactivity disorder, PTSD, anxiety disorder, and panic disorder. AR 36–37. But it found that Davis: (1) did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"; (2) "ha[d] the residual functional capacity ["RFC"] to perform a full range of work" with certain non-exertional limitations; and (3) could perform "jobs that exist[ed] in significant numbers in the national economy." AR 37–44; *see* 20 C.F.R. § 404.1545(a) (defining RFC and explaining its assessment and use); *id.* §§ 404.1545(a)(3), 404.1546(c) (reflecting that an ALJ is responsible for determining a claimant's RFC at a disability hearing based on all of the relevant medical and other evidence); Social Security Ruling ("SSR") 96-8p (providing policy guidance regarding assessment of RFC).

In reaching her conclusion, the ALJ stated that Davis's impairments "could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 40. The ALJ also considered the opinions of state-agency consultants Lisette Constantin and Pauline Hightower, treating physician Daniel Fox, and nurse practitioner Theresia Tabe. The ALJ found the opinions persuasive to varying degrees. AR 42–43.

Constantin examined the record and found that Davis could perform simple work. AR 98–105. The ALJ found that opinion persuasive because, in her view, it was consistent with the overall

3

evidence and was supported by the record as a whole. AR 42. Hightower also reviewed the record but opined that Davis could perform detailed tasks. AR 106–14. The ALJ found that opinion unpersuasive because it was not supported by "the variably abnormal mental status exam findings" and was inconsistent with Constantin's opinion. AR 42.

Fox opined that Davis could understand simple tasks and maintain social interaction but could not sustain concentration or "persist in work related activity." *Id.* The ALJ found Fox's opinion "not entirely persuasive" because it was "not entirely supported by [his] own mental status findings, especially regarding her ability to concentrate." *Id.* The ALJ found Fox's opinion to be "[in]consistent with the longitudinal record where at times her concentration was deficient but on other instances no abnormalities were noted." AR 42–43.

Finally, the ALJ considered Tabe's opinion. The paragraph of the decision addressing that opinion reads, in full:

> In December 2023, Theresia Tabe, APRN, PMHNP opined the claimant has some loss of ability to perform several different work-related mental activities with no loss in her ability to maintain attention and concentration for 2 hours or perform at a consistent pace (10F [AR 608–11]). She would likely be absent from work 2-3 times monthly for 4-6 hours a day. The undersigned finds this opinion partially persuasive as it is partially supported by the objective clinical findings and treatment history and is partially consistent with the reported daily activities.

AR 43. Based on "[Davis's] subjective statements to treatment providers, the longitudinal treatment history, and the objective evidence," *id.*, the ALJ made the following RFC assessment:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes, or scaffolds. She needs to avoid exposure to extremes of heat and to other unprotected heights. She is limited to performing simple, routine tasks and simple decision-making, with no more than occasional changes in a routine environment. She can have occasional interaction with supervisors, coworkers, and the public.

AR 39.

The Administration's appeals council denied review of the ALJ's decision. AR 1–6. Davis timely sought judicial review. Dkt. 1; *see* 42 U.S.C. § 405(g).

### RELEVANT LAW AND STANDARD OF REVIEW

The Social Security Act governs, among other things, disability insurance and supplemental security income benefits. *See* 42 U.S.C. §§ 423, 1381. To be entitled to either, a claimant must have a "disability," a term principally defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).

At a hearing before an ALJ, a claimant generally bears "the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The ALJ must determine whether: "(1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work." *Id.* at 453 (citing 20 C.F.R. § 404.1520). The burden shifts to the Commissioner only at the fifth step of that analysis. *See id.* But if the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (quotation marks omitted).

Under § 405(g), a court's review of an ALJ's decision is "highly deferential." *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). The court's role is limited to "ascertain[ing] whether (1) the final decision is supported by substantial evidence and (2) . . . the Commissioner used the proper legal standards to evaluate the evidence." *Newton*, 209 F.3d at 452. "Substantial evidence" is more than a scintilla but less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* And although a court "must carefully scrutinize the record to determine if, in fact, [substantial] evidence is present," *Hollis v. Bowen*, 837 F.2d 1378,

1383 (5th Cir. 1988), it "may not re-weigh the evidence or substitute [its] judgment for that of the Commissioner," *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

It is the ALJ's job, not the court's, to resolve any evidentiary conflict. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). For that reason, "a reviewing court must affirm the Commissioner, even when the court disagrees with the Commissioner's decision, so long as it is supported by some evidence that any reasonable fact finder might accept." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006); *see Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). An ALJ's failure to follow an applicable legal standard, however, requires remand when the error is harmful. *See Newton*, 209 F.3d at 452; *Lacher v. Comm'r, SSA*, No. 4:23-CV-00551-ALM-AGD, 2024 WL 4206749, at *6 (E.D. Tex. Aug. 26, 2024), *report and recommendation adopted,* 2024 WL 4205585 (E.D. Tex. Sept. 16, 2024).

## THE PARTIES' ARGUMENTS

In a single issue, Davis argues that the ALJ erred by crediting Tabe's opinion as "partially persuasive" but failing to include in the RFC determination Tabe's conclusion that Davis would experience workplace absences two to three times per month. Pl. Br. 5. Davis argues that the ALJ failed to reconcile the vocational expert's testimony that "no work would be available for a person with more than two absences" with the omission of an RFC absenteeism limitation. *Id.*

In Davis's view, the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not find Tabe's opinion completely unpersuasive. *See id.* at 10–11. According to Davis, the ALJ was unjustified in failing either to note Davis's workplace absences in the RFC or explain why doing so was not appropriate. *See id.*

Davis relies on the ALJ's decision not to discard Tabe's opinion as unpersuasive. *Id.* at 11. She argues that, by considering Tabe's opinion but not explaining what parts of it she agreed with, the ALJ "deprive[d] the court of meaningful review." *Id.* at 13. She further asserts that remand is necessary because "it's uncertain whether the ALJ was persuaded that absenteeism was a legitimate limitation." *Id.*

In response, the Commissioner argues that the ALJ's review of the record was sufficient under the applicable law. He asserts that the ALJ properly considered the record evidence and explained how persuasive she found it. Def. Br. 5. He points out that the ALJ found "Tabe's opinion that [Davis] would be absent from work two to three days per month was not fully supported by the objective medical evidence and was not consistent with [Davis]'s ability to work after her disability onset date and her daily activities." *Id.* (citing AR 35–36, 40–43).

According to the Commissioner, the ALJ considered Tabe's records and found Davis's course of treatment "routine and conservative in nature." AR 41; Def. Br. 5. He further notes that Tabe "did not opine that [Davis] would be absent from work two to three times per month" in her treatment notes. Def. Br. 5. He argues that the ALJ properly considered Tabe's opinion and that Tabe's "treatment notes support the ALJ's finding that [Davis] had the RFC to perform simple, routine work." *Id.* He also argues that Tabe's "opinion regarding [Davis]'s absenteeism was inconsistent with other evidence" and that the ALJ concluded that "[Davis] was not as limited as she alleged." *Id.* at 6. Finally, he notes that the ALJ "was not required to adopt a specific medical provider's assessment, and the ALJ has the responsibility to determine a claimant's RFC." *Id.* at 7.

In reply, Davis re-urges her argument that "the ALJ embraced, not rejected, nurse Tabe's opinion" by labeling it partially persuasive. Pl. Reply Br. 1. She argues that the ALJ was required to explain why she declined to adopt Tabe's opinion and failed to include the absentee limitation in her RFC finding. *Id.* at 2–3.

## ANALYSIS

Under the applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (comparing § 404.1520c with its predecessor and citing a Social Security Administration final rule for its explanation that the current regulations

allow "courts to focus on the content of the evidence rather than on the source" (cleaned up)). The regulations instead require the ALJ to "articulate . . . how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).

When evaluating whether a medical provider's opinion is persuasive, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the provider's opinion. 20 C.F.R. § 404.1520c(c). The first two are "the most important factors"; the regulations state that the ALJ "will explain" how he or she considered them. *Id.* § 404.1520c(b)(2). But the ALJ need not explain how he or she considered the three remaining factors. *Id.*; *Hepburn v. O'Malley*, No. 6:24-CV-540-SJH, 2024 WL 4647948, at *5 (M.D. Fla. Nov. 1, 2024).

The regulations define the primary factors as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

The regulatory text does not impose a "magic words" requirement. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). That is to say, "there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). Remand is appropriate only if there is no indication that the ALJ applied the correct standard. *Keel*, 986 F.3d at 556. "[T]erse" findings may suffice. *Miller v. Comm'r of Soc. Sec.*, No. 120-CV-00194-HSO-RPM, 2022 WL 566175, at *6 (S.D. Miss. Feb. 24, 2022).

8

Generally, the RFC is an assessment based on relevant evidence of a claimant's maximum ability to work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant can do despite her limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

As noted, Davis argues that the ALJ's failure to address Tabe's absenteeism opinion in her RFC assessment renders her decision "so vague as to preclude meaningful judicial review." Pl. Br. 11. She is correct. Remand is required here because the ALJ's analysis was insufficient and the error was prejudicial. On remand, the ALJ should also reconsider whether Davis cleared the first hurdle on her path toward a benefits award by meeting her burden to show that she was not engaged in substantial gainful activity during the relevant time period.

### A.  The ALJ's failure to conduct a proper persuasiveness analysis of Tabe's opinion

An ALJ need not incorporate limitations in an RFC that she finds unsupported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). But if she finds a medical opinion unpersuasive, she must explain why. 20 C.F.R. § 404.1520c(b)(2).

In particular, although "ALJs need not exhaustively explain their reasoning, they must explain how they considered the supportability and consistency factors for medical opinions in [a claimant's] determination or decision." *Lacher*, 2024 WL 4206749, at *7 (cleaned up). Boilerplate explanations do not suffice. *See Erlandsen v. O'Malley*, No. 4:23-cv-83-ALM-KPJ, 2024 WL 898915, at *6 (E.D. Tex. Feb. 14, 2024) (collecting cases), *report and recommendation adopted,* 2024 WL 897598 (E.D. Tex. Mar. 1, 2024); *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 501 (S.D. Miss. 2021). Instead, the ALJ must cite "specific evidence in the record supporting his supportability and consistency determination." *Erlandsen*, 2024 WL 898915, at *4 (cleaned up).

Courts in the Fifth Circuit require an ALJ to "articulate 'a discernible logic bridge between the evidence and the ALJ's persuasiveness finding,'" *Morgan v. Kijakazi*, No. 4:22-cv-631-ALM-KPJ, 2023 WL 6238052, at *6 (E.D. Tex. Aug. 31, 2023) (quoting *Nunley v. Kijakazi*, No. 4:22-cv-0625,

9

2023 WL 2386747, at *4 (S.D. Tex. Mar. 6, 2023)), *report and recommendation adopted,* 2023 WL 6221773 (E.D. Tex. Sept. 25, 2023). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Hubbard*, 2022 WL 196297, at *4.

As noted, the ALJ stated the following when explaining the persuasiveness of Tabe's opinion:

> In December 2023, Theresia Tabe, APRN, PMHNP opined the claimant has some loss of ability to perform several different work-related mental activities with no loss in her ability to maintain attention and concentration for 2 hours or perform at a consistent pace (10F [AR 608–11]). She would likely be absent from work 2-3 times monthly for 4-6 hours a day. The undersigned finds this opinion partially persuasive as it is partially supported by the objective clinical findings and treatment history and is partially consistent with the reported daily activities.

AR 43. When determining whether the ALJ's decision is supported by substantial evidence, the court is not limited to reviewing only that paragraph. It may consider the entire RFC discussion and the evidence discussed in it. *See Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023); *Teixeira v. Comm'r, SSA*, No. 4:21-CV-00003-SDJ-CAN, 2022 WL 3130859, at *11 (E.D. Tex. July 12, 2022), *report and recommendation adopted,* No. 4:21-CV-3, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022).

Here, however, the ALJ's RFC discussion says nothing about Davis's potential absenteeism limitation. *See* AR 39–45. The ALJ did refer to some of Tabe's medical records, AR 40–41, but she did not connect any of those findings to her decision to omit Tabe's absenteeism opinion. The ALJ noted Tabe's opinion that Davis would be absent from work multiple times each month. AR 43; *see* AR 610–11 (form completed by Tabe stating: "2–3 X monthly for 4–6 hrs per day" and selecting "about 3 days per month" in response to the question "On the average, how often do you anticipate your patient's impairments/symptoms or treatment would cause your patient to be absent from work?"). And at the hearing, the ALJ asked vocational expert Hildre questions relating to that possible limitation. *See* AR 88–94. One of the questions was whether a hypothetical person could hold an unskilled job if she was absent more than two days a month. AR 94. Hildre responded: "No." *Id.*

Although the ALJ determined that Tabe's opinion was "partially persuasive," AR 43, she did not explain what part of Tabe's multi-part opinion was persuasive and therefore did not provide the logic bridge necessary for the court to conduct a meaningful review. And even though the ALJ discussed the medical evidence in her RFC finding, she did not explain how Tabe's absenteeism opinion conflicted with that evidence. *See* AR 43.

The Commissioner reads "partially persuasive" to indicate that the ALJ found Tabe's opinion on Davis's absenteeism not fully supported or consistent. Def. Br. 5. He points to the ALJ's findings regarding substantial gainful activity and impairments, AR 35–36, and the part of the RFC discussion offered in support of that conclusion, AR 40–43. Although the ALJ's report mentioned Davis's workplace absences, it just recounted Davis's testimony. *See* AR 36. The ALJ did not discredit Davis's testimony or address how Tabe's opinion fit into the picture. The Commissioner's argument that "[t]he ALJ found Ms. Tabe's opinion that [Davis] would be absent from work two to three days per month was not fully supported by the objective medical evidence and was not consistent with [Davis]'s ability to work after her disability onset date and her daily activities," Def Br. 5, lacks support in the record.

The ALJ never stated that she found Tabe's opinion lacking for the reasons the Commissioner now identifies. In fact, she did not explain her thoughts behind Tabe's opinion at all; she just labeled the opinion "partially persuasive" without specifying which part was persuasive and which was not. *See* AR 43.

The Commissioner also argues that Tabe "did not opine that [Davis] would be absent from work two to three times per month" in her treatment notes. Def. Br. 5. But as noted, the form Tabe filled out stated that her absences would be "2–3 X monthly for 4–6 hrs per day," and it has a checkmark beside "about 3 days per month." AR 610–11. That is presumably why the ALJ did not raise the concern that the Commission asserts now—which, in any event, would be a post hoc rationalization incapable of supporting the Commissioner's argument. *See Newton*, 209 F.3d at 455 (explaining that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision"); *Furr v. Comm'r, SSA*, No. 4:16-CV-00821-CAN, 2018 WL 1457318, at *6 (E.D. Tex.

Mar. 23, 2018) (finding the Commissioner's argument "an impermissible *post hoc* rationalization of the ALJ's decision").

Without any elaboration of what "partially persuasive" means, the court is left to speculate about the reasons underlying the ALJ's analysis of Tabe's opinion. *See Hearn v. Kijakazi*, No. 4:21-cv-562-SDJ-KPJ, 2022 WL 4477340, at *6 (E.D. Tex. Aug. 30, 2022), *report and recommendation adopted,* 2022 WL 4474251 (E.D. Tex. Sept. 26, 2022). Because the court cannot conduct a meaningful review, it must remand the case if the error was prejudicial. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

## B.  Prejudice

Even though the ALJ erred by failing to explain her persuasiveness determination, the court may reverse her decision only if those errors prejudiced Davis. *See id.* The ALJ's failure to apply the proper legal standard "does not require an automatic reversal." *Keel*, 986 F.3d at 556. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id.*

The court must take the ALJ at her word. She found Tabe's opinion partially persuasive, but she did not explain what parts she adopted and what parts she disagreed with. The ALJ concluded that Davis could perform a full range of work with some non-exertional limitations, but she did not include Tabe's recommended limitation of absenteeism. AR 39. Yet Hildre testified that there would not be any unskilled labor for Davis to perform if that limitation were present. AR 94. It is therefore "[]conceivable that a different administrative conclusion would have been reached even if the ALJ did not err," *Keel*, 986 F.3d at 556, so Davis has done enough to show that the error is not harmless.

## C.  The need to reconsider step one on remand

The ALJ's decision correctly explained that, "[i]f an individual engages in [substantial gainful activity], she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience," recognizing that "the analysis proceeds to the second step" only "[i]f the individual is not engaging in [substantial gainful activity]." AR 34;

12

*see* 20 C.F.R. § 404.1520(a)(4), (b). It nevertheless went on to find facts suggesting that Davis had, in fact, engaged in substantial gainful activity during the relevant time, AR 35–36, then stated: "Despite these findings and given that the [ALJ] finds [Davis] not disabled based on other grounds, the [ALJ] will proceed onto the next step in the sequential evaluation process." AR 36.

If Davis cannot pass step one, the analysis should not proceed further. *See* 20 C.F.R. § 404.1571 (explaining that, if a claimant is "able to engage in substantial gainful activity, [the Commission] will find that [she is] not disabled"). On remand, the ALJ should therefore reconsider whether Davis can pass step one even though she "has been working for what appears to be the past year." AR 41; *see Merendino v. Comm'r of Soc. Sec.*, No. 15-3900(NLH), 2016 WL 3041849, at *6 (D.N.J. May 27, 2016); *Rollins Kiddy v. Colvin*, No. 13-CV-674-GKF-TLW, 2015 WL 898270, at *18 (N.D. Okla. Mar. 3, 2015).

## CONCLUSION

It is **ORDERED** that the Commissioner's decision is **REVERSED** and that the case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

So **ORDERED** and **SIGNED** this 9th day of March, 2026.

_____
Bill Davis
United States Magistrate Judge

13